J-A06006-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

|  |  |  |
|---|---|---|
| G.M. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| N.M. | : | |
| Appellant | : | No. 2316 EDA 2024 |

Appeal from the Order Entered August 13, 2024
In the Court of Common Pleas of Delaware County Civil Division at
No(s):  CV-2015-002271

BEFORE:   PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.:                    **FILED MAY 20, 2025**

N.M. ("Mother") appeals from the August 6, 2024 order of the Court of Common Pleas of Delaware County granting the request of G.M. ("Father") to relocate with their eight-year-old daughter, Mas.M. ("Child"), from Havertown, Pennsylvania to Gainesville, Florida, and to modify the existing custody order. After careful review, we affirm.

The certified record reveals the relevant factual and procedural history of this matter.  Child, who was born in October of 2015, is the youngest child born from the parties' union.  They also share sons, Da.M. and De.M., ages

_____

[*] Former Justice specially assigned to the Superior Court.

eighteen and sixteen, and daughter Mal.M., age fourteen (collectively, "Siblings"), none of whom are subjects of this appeal.[1]

Father served in the United States Army from January of 2002, until his honorable discharge in December of 2007, during which time he earned a Bronze Star and a Purple Heart. As best we can discern, the parties resided together in multiple states in connection with Father's service. As a result of his military service, Father suffers from post-traumatic stress disorder ("PTSD") and is deemed by the Department of Veterans Affairs to be "100 percent" disabled. N.T., 7/2/24, at 79, 159.

Prior to Child's birth, the parties and Siblings resided together in the country of Belize in Central America. The record does not disclose when the family moved to Belize, or how long they resided there. Mother left Belize with Siblings and moved to Pennsylvania in approximately January of 2015. Father moved to Pennsylvania later that same winter.

On March 13, 2015, at which time Mother was pregnant with Child, Father initiated the underlying custody matter in the Court of Common Pleas of Delaware County by filing to register a foreign custody order from Belize,

_____

[1] In the order on appeal, the trial court set forth the parties' custody awards for Siblings as well as Child, except for Da.M., who had turned eighteen years old prior to the proceedings. Specifically, the court awarded Father primary physical custody of De.M. However, the court denied Father's request with respect to Mal.M. The court reasoned that Mal.M.'s mental health was fragile, and the court did not want to disturb her relationship with her therapist. **See** Trial Court Opinion, 8/22/24, at 5-6. Neither party appealed the order as to De.M. or Mal.M.

which was dated February of 2015, and awarded him "interim legal custody" of Siblings. In addition, Father filed an emergency petition for sole legal and physical custody of Siblings, wherein he alleged that Mother fled from Belize to Pennsylvania with Siblings after being served with his custody petition. The trial court granted Father's emergency petition and extensive litigation ensued.

At the time of Child's birth, the parties had shared legal custody of Siblings, Mother was awarded primary physical custody pursuant to a March of 2015 interim custody order, and Father partial physical custody. The certified record does not contain any custody orders as to Child until April of 2017.[2] The court ultimately entered an April of 2017 agreed-upon order awarding Mother primary physical custody of Child and Siblings and Father partial physical custody on Friday through Sunday evenings. Following this order, there have been numerous filings by the parties for modifications,

---

[2] When Child was born, the trial court created a docket number, separate from Siblings, for her case. There was a jurisdictional issue for Siblings' case because of the Belize order, but there was no question of jurisdiction as to Child. The court later merged Child's docket with Siblings in December of 2017 following a petition from Father requesting same. We discern that this initial separation of dockets may have resulted in the absence of record documents in the certified record.

contempt, and other related issues, which resulted in the court issuing five separate interim orders.[3]

On November 12, 2020, the trial court issued the existing custody order, which awarded the parties shared legal custody of Child and Siblings and equally shared physical custody on an alternating weekly basis, with exchanges at 7:00 p.m. on Sundays. *See* Custody Order, 11/12/20, at 1 (unpaginated). The court further provided:

> If Mother so desires, Mother shall have custody of [Child], [] for overnight visitation on Wednesday night of Father's custody week, with 48-hour notice to Father.

*Id.* At that time and throughout the subject proceedings, Father resided in Havertown, Pennsylvania, and Mother resided in Drexel Hill, Pennsylvania.

In October of 2021, Mother filed *pro se* a petition to modify the existing custody order, although she failed to specify her custody request. Father, through his counsel, filed an answer in February of 2022, wherein he requested that the court deny Mother's petition and grant him "additional time" with Child and Siblings. Father's Answer, 2/24/22, at 3 (unpaginated). While Mother's petition was pending, Father filed a notice of proposed relocation with Child and Siblings to Alachua County, Florida, on November

---

[3] The record reveals that the trial court issued a final protection from abuse ("PFA") order on Father's behalf against Mother on May 17, 2018, for a three-year term. *See* Father's Exhibit 4. The PFA order did not pertain to Child or Siblings and continued the parties' then-existing custody order. *See id.* at 3.

14, 2022. Mother filed a counter-affidavit on December 5, 2022, objecting to both the proposed relocation and modification of the existing custody order.

The trial court ultimately held evidentiary hearings on the proposed relocation and custody modification requests on July 1, July 2, and July 12, 2024. At the time of the proceedings, Father maintained his Havertown residence, where he lived with his blended family. Specifically, at a time undisclosed in the record, Father married Mo.M. ("Stepmother"), and they share a three-year-old son. They also have an adult foster son who attends college and returns home during school breaks. In addition, Stepmother has two daughters, ages thirteen and nine ("Stepsiblings"). Father revealed during the hearings that Stepmother purchased a home for the family in her name in Gainesville, in Alachua County, Florida, but the family had not yet moved. **See** N.T., 7/2/24, at 59-61, 146-47.

Mother was neither remarried nor cohabiting with a partner at the time of the subject proceedings. However, Mother has a five-year-old son from a prior relationship.

Father testified on his own behalf and presented the following witnesses: Stepmother; Ken Lewis, Ph.D., who was appointed by the court to perform a custody evaluation and opined that Child and Siblings should be relocated to Florida with Father inasmuch as his assessment concluded that the majority of the relocation factors favored Father; and C.T., Father's sister ("Paternal Aunt"). Mother testified on her own behalf and presented the testimony of

Child's maternal grandmother ("Maternal Grandmother"). The parties collectively proffered over sixty exhibits.

Father testified that he desired to relocate to Florida with Child and Siblings because he asserted that they would receive tuition-free higher education at public universities in Florida due to his military service. Specifically, Father testified that this free tuition is available to his children as a result of his above-described military awards and his service-related disability. **See** N.T., 7/2/24, at 81-82.

Siblings were not high school graduates at the time of the proceedings. De.M. was in tenth grade, and Mal.M. was in ninth grade. **See** Father's Exhibit 6; Father's Exhibit 8. Child was in third grade at the time of the proceedings.

In addition, Siblings were exceptional track runners, and Father contended that the proposed high school they would attend in Florida had a stellar reputation for its track program. **See** N.T., 7/2/24, at 136. Father requested that the court grant his request to relocate to Florida with Child and Siblings and award him primary physical custody.

Mother testified that she opposed the relocation because of the impact it would have on her custodial time and her concerns about the instability, if any, it would cause for Child and Siblings. **See** N.T., 7/1/24, at 55. In addition, Mother testified that she would be unavailable in the case of emergencies should they occur with Child and Siblings. **See id.**

On July 1, 2024, the trial court conducted *in camera* interviews of Child, then age eight, and De.M., and Mal.M. Child testified that she would be content living primarily in either location with either parent and spending her school breaks with the other parent.

By order dated August 6, 2024, and entered on August 13, 2024, the trial court granted Father's request to relocate with Child to Florida. The court awarded the parties shared legal custody of Child, Father primary physical custody, and Mother partial physical custody during holiday breaks from school, including Child's Thanksgiving and spring breaks in even years, and her Christmas breaks in odd years. With respect to Mother's custody award during Child's summer vacation, the court awarded her custody of Child in Pennsylvania "from the first Sunday, after the last day of school . . . to the last Sunday of the month in July . . ." Custody Order, 8/6/2024, at 2 (unpaginated). Additionally, Mother was awarded two weeks of vacation with Child, which may run consecutively, but not during Father's holiday, spring, or summer break custodial time. *See id.* at 5 (unpaginated). The court entered an opinion with its related findings of fact and conclusions of law on August 22, 2024.

On August 28, 2024, Mother timely filed a notice of appeal and concise statement of errors complained of on appeal pursuant to Rule 1925(a)(2)(i) and (b). The trial court filed its Rule 1925(a) opinion on October 15, 2024.[4]

On appeal, Mother raises the following issues for our review:

1. Did the trial court abuse its discretion in failing to place primary physical custody of [Child] in Mother under the law and the facts and circumstances of this case?

2. Did the trial court abuse its discretion in granting Father's request for relocation with [Child], when he failed to meet the burden of proving that relocation would be in [Child]'s best interest?

Mother's Brief at 6.

Our standard of review is well-established:

[T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. . . . However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. . . . Thus, an appellate court is empowered

_____

[4] The trial court's Rule 1925(a) opinion requested that this Court quash Mother's appeal because of the length of her concise statement, which included twenty-three asserted errors. *See* Trial Court Opinion, 10/15/24; *see also* Rule 1925(b) statement, 8/28/24. We decline to quash Mother's appeal on this basis. In the statement of questions involved in her brief, Mother consolidated the asserted errors into two issues. In addition, the court incorporated into its 1925(a) opinion its comprehensive analysis in the August 22, 2024 opinion which accompanied the subject order. Therefore, Mother's voluminous 1925(b) statement does not impede our appellate review. *See Eiser v. Brown & Williamson Tobacco Corp.*, 938 A.2d 417 (Pa. 2007) (holding that a voluminous Rule 1925(b) statement is not a basis for waiver when the appellant narrowed the issues in his statement of questions involved in his brief, there was no "bad faith" or "attempt to thwart the appellate process" by the appellant, and ultimately there was no "impair[ment of] meaningful appellate review.").

to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

***R.M.G., Jr. v. F.M.G.***, 986 A.2d 1234, 1237 (Pa. Super. 2009) (quoting ***Bovard v. Baker***, 775 A.2d 835, 838 (Pa. Super. 2001)). Moreover,

[O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.

The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

***R.M.G., Jr., supra*** at 1237 (internal citations omitted). The test is whether the evidence of record supports the trial court's conclusions. ***Ketterer v. Seifert***, 902 A.2d 533, 539 (Pa. Super. 2006).

***A.V. v. S.T.***, 87 A.3d 818, 820 (Pa. Super. 2014).

We have explained, "It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given [sic] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion. . . ." ***King v. King***, 889 A.2d 630, 632 (Pa. Super. 2005) (quoting ***Hanson v. Hanson***, 878 A.2d 127, 129 (Pa. Super. 2005)). This Court has recognized that "the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court

by a printed record." **Ketterer**, 902 A.2d at 540 (quoting **Jackson v. Beck**, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

With respect to custody cases, the primary concern is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." **Saintz v. Rinker**, 902 A.2d 509, 512 (Pa. Super. 2006), *citing* **Arnold v. Arnold**, 847 A.2d 674, 677 (Pa. Super. 2004).

Child custody actions are governed by the Child Custody Act, 23 Pa.C.S.A. §§ 5321-5340. Section 5328(a) sets forth the following factors that the court must consider when awarding custody:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to the factors specified under paragraphs (1), (2), (2.1), and (2.2) which affect the safety of the child, including the following:

(1) Which party is more likely to ensure the safety of the child.

(2) The present and past abuse committed by a party or member of the party's household, which may include past or current protection from abuse or sexual violence protection orders where there has been a finding of abuse.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(2.2) Violent or assaultive behavior committed by a party.

(2.3) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party if contact is consistent with the safety needs of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life, except if changes are necessary to protect the safety of the child or a party.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of abuse where reasonable safety measures are necessary to protect the safety of the child. A party's reasonable concerns for the safety of the child and the party's reasonable efforts protect the child shall not be considered attempts to turn the child against the other party. A child's deficient or negative relationship with a party shall not be presumed to be cause by the other party.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child or self from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16)  Any other relevant factor.

23 Pa.C.S.A. § 5328(a).[5]

When a parent makes a request for relocation with a child, the trial court must also consider the relocation factors provided by the Act, which are as follows:

**(h)  Relocation factors.**—In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1)  The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2)  The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3)  The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody

_____

[5] Section 5328(a) was amended on April 15, 2024, which became effective on August 13, 2024.  **See** 23 Pa.C.S.A. § 5328 (amended April 15, 2024, P.L. 24, No. 8, § 3, effective in 120 days).  The amendments included the addition and/or revision of Section 5328(a)(1), (2), (2.2), (2.3), (4), and (8), all of which relate to the safety needs of children.

In this case, the subject proceedings occurred in July of 2024.  However, the trial court applied Section 5328(a), as amended.  By doing so, the court erred.  **See C.R.F. v. S.E.F.**, 45 A.3d 441, 445 (Pa. Super. 2012) (concluding that provisions of the Act apply "if the evidentiary proceeding commences on or after the effective date of the Act[.]").  Nonetheless, because Child's safety was not at issue in the subject proceedings and neither party has claimed prejudice, we deem the court's error harmless.  In this disposition, we review the subject order under the amendment to the best interest factors for continuity with the court's opinion and Mother's arguments.

arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h).

The party seeking relocation has the burden of proving that relocation will serve the best interests of the child in light of these ten factors. *J.M. v. K.W.*, 164 A.3d 1260, 1264 (Pa. Super. 2017) (*en banc*); *see also* 23 Pa.C.S.A. § 5337(i)(1). "Each party has the burden of establishing the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation." 23 Pa.C.S.A. § 5337(i)(2).

Further, with regard to the custody and relocation factors, this Court has stated:

>**All** of the factors listed in [S]ection 5328(a) are required to be considered by the trial court when entering a custody order. Section 5337(h) requires courts to consider all relocation factors. The record must be clear on appeal that the trial court considered all the factors.
>
>Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, [S]ection 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen Section 5328[(a)] custody factors prior to the deadline by which a litigant must file a notice of appeal.
>
>In expressing the reasons for its decision, there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations. A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d).

*A.V. v. S.T.*, 87 A.3d at 822-23 (some citations omitted, formatting altered, and emphasis in original).

This Court has explained that the amount of weight a trial court gives any one factor is almost entirely discretionary. *See M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa. Super. 2013). "It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *M.J.M.*, 63 A.3d at 339 (internal citations omitted). This Court has also stated that "[a] court should avoid dissociating the issue of primary custody from the issue of relocation, and should . . . decide the two issues together under a single umbrella of best interests of the children." *S.S. v. K.F.*, 189 A.3d 1093, 1098 (Pa. Super. 2018) (citations omitted and formatting altered).

- 14 -

With respect to the custody factors, the trial court weighed Section 5328(a)(2), (2.2), (2.3), (4), (7), (9), (10), and (13) in Father's favor.[6] The court weighed Section 5328(a)(11) and (15) in Mother's favor. The court found Section 5328(a)(1), (2.1), (3), (5) – (6), (8), (12), and (14) to be neutral. In addition, the court found Section 5328(a)(16) inapplicable in this case. *See* Trial Court Opinion, 8/22/24, at 10-19.

The trial court found Section 5328(a)(2.3), (4), (7), (9) – (10), and (13) determinative in this case. The court found that Father was more likely to encourage and permit contact between Mother and Child; Child's stability would best be served with Father; and Child was neutral about her preference. *See* Trial Court Opinion, 8/22/24, at 6, 11-13, 15. The court further found that Father was the party who was more likely to maintain the type of relationship contemplated in Section 5328(a)(9); Father was the party who was more likely to better attend to Child's daily needs; and Father was more willing to cooperate in co-parenting than Mother. *See id.* at 15-18.

With respect to the relocation factors, the court found that seven of them favored relocation. Specifically, the court weighed Section 5337(h)(1) – (6) and (9) in favor of relocation. The court found Section 5337(h)(7) – (8) to be neutral. Further, the court found Section 5337(h)(10) inapplicable. *See*

---

[6] With respect to Section 5328(a)(2.2), the court weighed the expired PFA entered against Mother, discussed *supra*.

Trial Court Opinion, 8/22/24, at 3-10. The trial court found the first six relocation factors determinative.

Turning to the merits of this appeal, we preliminarily note that all of Mother's arguments in her two issues ask this Court to re-weigh the evidence. *See* Mother's Brief at 25-68. We decline to do so, as we must defer to the trial court's determinations with respect to the weight of the evidence inasmuch as they are supported by the record evidence. *See **A.V. v. S.T.**,* 87 A.3d at 820.

Mother's first issue challenges the trial court's findings with respect to Child as to Sections 5328(a)(2.3), (4), (7), (9), and (10). *See* Mother's Brief at 25-56. Mother contends that weighing these factors in favor of Father was manifestly unreasonable in light of the evidence in the certified record, and therefore, the court abused its discretion. *See id.* We disagree.

With respect to Section 5328(a)(2.3), which party is more likely to encourage and permit frequent and continuing contact between the child and another party if contact is consistent with the safety needs of the child, Mother cites several instances wherein Father allegedly interfered with her custodial time. *See* Mother's Brief at 25-30. Specifically, Mother asserts that Father regularly traveled alone on overnight trips and does not extend Mother the option to have custody of Child during those trips; Father failed to release Child during her custodial time on Memorial Day in 2024; and Father failed to inform Mother about one vacation that interfered with one Wednesday of her

optional custodial time with Child.  *See id.* at 25-27.  Mother also asserts that the court should not have "held it against" her that Mal.M. did not want to attend custodial time with Father following an incident with Da.M. and Father.  *Id.* at 27-30.

Relevant to this factor, the trial court made the following findings:

The court interpreted several actions of Mother, throughout the course of the trial, indicative of a parent who did not seek to promote the relationship of the children with Father.  So, though Mother may not have attempted to thwart Father's relationship[s], her failure to promote it was the functional equivalent.

. . .

Father testified to his efforts to encourage visitation between Mother and the children.  When the children were experiencing difficulties with Mother, Father would still take the children to Mother for custodial time[, w]hereas Mother admitted that she did not make the same efforts.  Rather, Mother withheld the oldest child[, Da.M.] from Father . . . and most recently, Mother has not made any concerted effort to bring [Mal.M.] to Father for Father's custodial time.

Trial Court Opinion, 8/22/24, at 7, 11.

Our review of the certified record reveals ample support for the trial court's findings.  Father testified to multiple instances wherein Mother had withheld their children from him for lengthy periods of time, as follows.  Father explained that Mother withheld Siblings after the court granted his initial emergency custody petition at the outset of the litigation in 2015.  *See* N.T., 7/2/24, at 99.  He testified that, thereafter, Mother "disappeared for 12 or 13 days" with Siblings, refusing to return them to him despite a court order from Delaware County and police intervention.  *Id.*

- 17 -

Further, Father testified that Mother withheld Da.M. from him over the course of the custody litigation. *See id.* Father stated that Mother failed to return Da.M. on several undated occasions, sometimes for "three or four days or a week or two weeks." *Id.* Father testified that he has not had his custodial time with Mal.M. since February of 2024, which was approximately five months before the subject proceedings, which Stepmother corroborated. *See id.* at 45, 77, 99-100. Mother admitted to withholding Da.M. and Mal.M. from Father during his custodial time. *See* N.T., 7/1/24, at 22, 35-37.

In addition, Father testified that he encouraged the children to attend their custodial time at Mother's home, even during instances where they did not desire to attend. *See* N.T., 7/2/24, at 117. Father stated the Mother fails to do the same. *See id.* Mother admitted that she has not historically enforced the children's attendance at Father's custodial time. *See* N.T., 7/12/24, at 194-95.

Mother's arguments as to Section 5328(a)(2.3) fail because the above record evidence supports the court's findings that Mother failed to encourage and permit frequent and continuing contact between Father, Child, and Siblings due to her extensive history of repeatedly withholding the children from Father. The court was within its discretion to determine that this subsection favored Father. No relief is due.

Turning to Section 5328(a)(4), the need for stability and continuity in the child's education, family life and community life, Mother argues that Child

- 18 -

is years away from gaining the benefits of higher education from Father's military service, and she is not currently participating in competitive track. *See* Mother's Brief at 30-32. Mother further contends that there was no record evidence about the quality of the Pennsylvania school district compared to the proposed Florida school district. *See id.* at 32-33. Mother baldly asserts that the court "discounted" the community Child has in Pennsylvania, Mother's presence in Child's life, and Mal.M.'s presence in Child's life. *Id.* at 33-35.

The trial court determined that "both parents have the ability to provide stability and continuity in the children's education, family life[,] and community life." Trial Court Opinion, 8/22/24, at 12. However, the court found that Father was "the parent best suited to attend to the children's educational needs." *Id.* The court noted that no matter which party was granted primary physical custody, Child would have to change school districts. *See id.* at 12-13.

The certified record contains sufficient support for the trial court's findings. There is no dispute that Child was currently attending school in Father's school district in Delaware County. Because Father and Stepmother had purchased a home in Florida, he was committed to the move, although he was awaiting the outcome of these proceedings to officially move and sell his Delaware County home. *See* N.T., 7/2/24, at 59-61. Therefore, even if the court denied Father's relocation request, Child would have to transfer to Mother's school district. *See id.* at 62.

It is undisputed that Child, at eight years old, would not be attending higher education for approximately one decade, and would not receive the related benefits from Father's military status in the near future. While Mother asserts that the court failed to compare the two prospective school districts, she provided no evidence as to the quality of the school district during her presentation of her case. Mother testified to Child's familiarity with the school district, but not its quality. *See* N.T., 7/12/24, at 152. Conversely, Father testified that he "specifically chose" to relocate to Gainesville, Florida, because of the "college readiness and [] AP scores" of the schools that the children would attend. N.T., 7/2/24, at 62.

Moreover, Father testified that when Child was in Mother's custody, he "constantly" received emails that Child was unprepared for school or showed up tired. *Id.* at 102. Father further stated that he has noticed that Child frequently did not complete her homework while at Mother's home, which would cause Child to have to complete the missed work when she returned to his care. *See id.* at 101-02. Mother acknowledged that Child's mathematics teacher expressed similar concerns about Child not completing her work during Mother's custodial time *via* email correspondence to the parties. *See* N.T., 7/12/24, at 250.

The record belies Mother's remaining arguments. Mother indeed testified to Child's familial ties in Pennsylvania, which included maternal grandparents and their extended family. *See* N.T., 7/12/24, at 151-52.

However, Stepmother testified that the entire blended family will be relocating to Florida. *See* N.T., 7/2/24, at 9-11, 36-37. Paternal Aunt also testified that her family, including Child's uncle and three cousins, was moving to Gainesville, Florida, shortly after the proceedings. *See* N.T., 7/1/24, at 236, 240-42.

When asked by Dr. Lewis which sibling Child was closest to, she stated nine-year-old Stepsibling and Father's three-year-old son, who would be relocating to Florida with Father. *See* Father's Exhibit 8 at 22. Child also testified that she was closest to Mal.M., but listed her last with respect to whom she "play[s] with" the most. N.T., 7/1/24, at 296. As the foregoing evidence supports that trial court's findings pursuant to Section 5328(a)(4), we discern no abuse of discretion. Mother is not entitled to relief under this subsection.

Next, we turn to Section 5328(a)(7), which assesses the well-reasoned preference of the child, based on the child's maturity and judgment. Mother argues that the court incorrectly summarized Child's testimony. *See* Mother's Brief at 38-41. Mother contends that Child did not express an interest in relocating to Florida, and Child testified that the sibling she was closest with was Mal.M. *See id.* at 40-41. Mother further asserts that De.M. and Mal.M. testified that Child should not be relocated to Florida and that Child is possibly scared of Father. *See id.* at 38-41. Finally, Mother argues that Child's

testimony about Stepsiblings is "not enough to tip this factor to Father." *Id.* at 41.

The trial court explained that Child "stated she was ok either way" when asked about her preference. Trial Court Opinion, 8/22/24, at 6, 15. The court found Child's preference to be "fair and well-reasoned." *Id.*

Our review of the certified record confirms the trial court's findings. Mother's arguments are disingenuous, as they are a mischaracterization of the children's testimony. Indeed, Child expressed an interest in relocating to Florida, as follows:

> THE COURT: What are some of your ideas about maybe going to Florida or staying here?
>
> A: I feel like going to Florida would be something nice to do and then staying, I don't really know.
>
> THE COURT: Okay. If you had to go to Florida – not had to. But if you went to Florida, would you be okay?
>
> A: Yes.
>
> . . .
>
> THE COURT: If you went to Florida and you came back here for all of the breaks, like Christmas breaks and summer breaks, would that be okay?
>
> A: I mean, yeah.
>
> . . .
>
> THE COURT: You would be happy in [Father]'s home in Florida if you went to Florida?
>
> A: Yes.

N.T., 7/1/24, at 294-96.

Contrary to Mother's bald assertions, neither De.M. nor Mal.M testified that Child was possibly scared of Father. Mal.M. stated that Child was "people pleasing to our parents," and would change her preference depending on whether she was speaking to Mother or Father. *Id.* at 280. De.M. expressed a similar sentiment, as follows:

> THE COURT: Has [Child] said anything to you about wanting to stay or [] go?
>
> A: Not specifically, but I feel like since she's younger, like she might be scared.
>
> THE COURT: Okay.
>
> A: I think that if [Father] would've asked her, she would say she wants to go. But if [Mother] asked her, she would say she wants to stay.

*Id.* at 288. The record is clear that Child did not fear Father but was merely reluctant to express a firm opinion in an effort not to dissatisfy either parent. Accordingly, we discern no abuse of discretion and conclude no relief is due as to Section 5328(a)(7).

Turning to Section 5328(a)(9), which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs, Mother argues that the evidence shows that this factor should have favored her due to her "supportive" parenting style. Mother's Brief at 42-43. Mother contends that she "scored higher on spending time with the children" in the custody evaluation. *Id.* at 42. Mother asserts that Father has a "restrictive" parenting style, an uncontrolled "temper," and

is "unstable emotionally." *Id.* at 47. Mother also takes issue that the court did not discuss Father's PTSD and its potential effect on Child.[7] *See id.* at 48-50.

The trial court found that "though Mother is able to provide a loving and nurturing relationship with the children, Father is the parent more likely to maintain" the relationship contemplated under this subsection. Trial Court, Opinion, 8/22/24, at 16. Our review of the certified record indicates that there is sufficient support for the trial court's findings.

In anticipation of the subject proceedings, Dr. Lewis completed a custody evaluation, which occurred over the course of April to June of 2024.[8] *See* Father's Exhibit 8 at 3, 7. Dr. Lewis assessed the parties' parenting styles and determined that Mother had a "permissive" style, which was more "lenient." N.T., 7/1/24, at 110. Dr. Lewis concluded that Father's parenting style was "restrictive," which was the "stricte[r]" household. *Id.* In consideration of these parenting style assessments, Dr. Lewis ultimately

---

[7] We note that, in her arguments for Section 5328(a)(9), Mother claims that the trial court failed to consider the presence of Father's adult foster son in his home because Mother does not have a "personal relationship" with him, and she was concerned about his unsupervised presence around Child. Mother's Brief at 52 (citing N.T., 7/12/24, at 146). Because we conclude that this argument is not relevant to Mother's ability to maintain a relationship with Child, as contemplated in this subsection, it fails. In addition, there is no record evidence that Father's adult foster son would threaten Child's safety in any way.

[8] Dr. Lewis completed two prior custody evaluations for the parties during their custody litigation, one in 2015 and one in 2017.

opined that Child and Siblings should be relocated to Florida with Father. *See* Father's Exhibit 8 at 23.

As part of the evaluation, Dr. Lewis testified that he conducted one-hour observations of each party wherein they participated in a self-selected interactive activity to demonstrate their "best parenting." N.T., 7/1/24, at 128; *see also* Father's Exhibit 8 at Attachment A-C. While Dr. Lewis acknowledged that Mother scored higher on the "spending equal time with each child" portion of the activity, he also clarified that Father scored eighteen points higher than Mother on the overall assessment. N.T., 7/1/24, at 171; *see also* N.T., 7/1/24, at 138. Dr. Lewis's report reveals that Father scored higher than Mother in every other portion of the activity. *See* Father's Exhibit 8 at Attachment B-C.

The certified record is devoid of evidence that Father had uncontrollable anger issues or emotional instability. Mother's sole citation to support her anger claim was taken out of context. Father testified to one specific incident where he was "upset and angry" after a track meet in New York. N.T., 7/2/24, at 134. Upon review, Mother's claim that Father's PTSD renders him emotionally unstable is insincere and inaccurate. Father stated that his PSTD is "an emotional thing," as he suffers from "guilt PTSD." *Id.* at 159-60. Father attested that he attends annual mental health evaluations and does not require medication for this diagnosis. *See id.* at 160. This evidence shows that Father is able to effectively manage his PTSD.

Further, there is nothing in the record to suggest any negative effect that Father's PTSD had on Child. Mother cites three articles in her appellate brief regarding the impact of PTSD on children, yet she did not offer these as exhibits or otherwise discuss them in the proceedings. Therefore, they are not part of the certified record, and we cannot consider them. *See In re L.L.N.*, 329 A.3d 691, 696 (Pa. Super. 2024) (stating that appellate review is limited to what is contained in the certified record); Pa.R.A.P. 1921.

In addition, we reiterate that the trial court was not required to detail specifics as to Father's PTSD in its opinion. *See A.V. v. S.T.*, 87 A.3d 818, 823. Therefore, we observe no abuse of discretion in the court's findings with respect to Section 5328(a)(9) and this claim fails.

Mother next takes issue with the trial court's findings as to Section 5328(a)(10), which concerns which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child. Mother argues that this factor should have been weighed in her favor because she was the *de facto* primary caretaker of Child because she regularly exercised her additional overnight with Child. *See* Mother's Brief at 53. Mother asserts that Father did not get the children medical treatment when they were ill, whereas she did. *See id.* at 45-46, 55.

The trial court found that "Father is the party more likely to attend" to the daily needs of the children. Trial Court Opinion, 8/22/24, at 17. The court

reasoned that Mother's claims regarding Father's failure to seek medical treatment were unsubstantiated. *See id.* at 16-17.

The certified record supports the court's findings. Because the party's existing custody order rotated weekly, they would each have two weeks with Child a month. Mother is correct that she would have two more overnights with Child in months where she exercised her additional time during both of Father's custodial weeks. However, she fails to articulate how those two extra overnights a month equate to her better attending to Child's needs than Father.

Father testified that when Da.M. was having a mental health crisis in 2020, Mother "refused to allow [Da.M.] to be helped." N.T., 7/2/24, at 75. Father stated that he had to seek court intervention to ensure Da.M. received treatment, which the court granted after a four-day trial. *See id.* at 75-76. Thereafter, Father testified that Mother failed to adhere to Da.M.'s treatment instructions, as follows:

> Q: You were still getting [Da.M.] to therapy and giving him his medication. Is that right?
>
> A: Correct. Well, part of it was because [Da.M.] was not taking his medication at [] [Mother]'s house. And he was having suicidal ideations. And that was explicitly explained to us, that he cannot miss any of the prescribed medicine because it would cause suicidal ideations and actually trigger some of his [] psychological issues. . . [Mother] admitted she's not giving him the medicine.

*Id.* at 76-77.

Mother testified that she is the person who takes the children to their doctor's appointments. *See* N.T., 7/12/24, at 15. Mother detailed a time when De.M. had a lengthy infection beginning in November of 2023. *See id.* at 71-73. While attempting to show that Father failed to take De.M. for medical treatment for said infection, Mother admitted that she did not take De.M. to the doctor until March of 2024. *See id.* at 71-75, 199-200. Mother could not substantiate any of her claims regarding this illness as she offered no medical records for De.M. *See id.* at 76-77, 217-21.

However, Father produced De.M.'s medical records that showed no appointments for De.M. in March of 2024. *See* Father's Exhibit 30. In addition, Maternal Grandmother testified that she has taken the children to multiple appointments during Mother's custodial time, which further contradicts Mother's testimony. *See* N.T., 7/12/24, at 331, 333, 349. Accordingly, we discern no abuse of discretion in the court's findings as to Section 5328(a)(10). No relief is due.

Based on the foregoing, we discern no abuse of discretion or error of law regarding the trial court's findings with respect to Child as to Sections 5328(a)(2.3), (4), (7), (9), and (10) of the Act. Thus, Mother's first issue merits no relief.

Mother's final issue is her challenge to the trial court's findings with respect to Child as to Section 5337(h)(1) - (5) and (7), which involve relocation. *See* Mother's Brief at 57-68. Mother makes an identical argument

here as she did in her first issue: that weighing these relocation factors in favor of Father was manifestly unreasonable in light of the evidence in the certified record, and therefore, the court abused its discretion. **See id.** Again, we disagree.

Mother simply renews her arguments made for Section 5328(a)(2.3), (4), (7), (9), and (10) with respect to Section 5337(h)(1) – (2), (4) – (5), and (7). **See** Mother's Brief at 57-67. These arguments must fail because, as discussed *supra*, we have found no abuse of discretion in the trial court's findings as to Section 5328(a)(2.3), (4), (7), (9), and (10).

To the extent Mother contends that the court erred in the weight it assigned certain factors, the court was well within its discretion, as the fact finder in the proceedings, to assign the weight it felt appropriate to each factor of Section 5337(h). **See M.J.M. v. M.L.G.**, 63 A.3d at 339. Because Mother also argues that the court abused its discretion because it failed to provide further explanations, we reiterate that our case law clearly states that the court was not required to explain with specificity its conclusions. **See** Mother's Brief at 60, 66; **A.V. v. S.T.**, 87 A.3d at 822-23 (stating that "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations."). Therefore, no relief is due with respect to Section 5337(h)(1) – (2), (4) – (5) and (7).

Next, we turn to Section 5337(h)(3), which concerns the feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties. Mother argues that the trial court "discounted" that Child would be "deprived" of regular contact with Mother, maternal grandparents, and her siblings in Pennsylvania if allowed to relocate to Florida. Mother's Brief at 62. She baldly contends that this deprivation cannot be remedied by video calls or custodial time on holidays and school breaks. *See id.* at 63.

Mother's arguments run contrary to the language of the final custody order. Indeed, Mother "shall have reasonable telephone and/or electronic communication with [Child]" while Child is not in Mother's custody. Custody Order, 8/6/2024, at 5 (unpaginated). The order further allowed Mother to request additional custodial time, beyond her partial physical custody award, that did not otherwise interfere with the ordered schedule. *See id.* at 4. Therefore, Child would not be deprived of any regular contact with Mother or her family in Pennsylvania. Further, Mother fails to explain how her award of custodial time and contact with Child would fail to preserve their relationship. Accordingly, we discern no abuse of discretion with respect to Section 5337(h)(1) – (5) and (7) of the Act. Thus, Mother's second issue fails.

Based on the foregoing, we conclude that none of Mother's arguments entitle her to relief. The trial court carefully and thoroughly considered the

best interests of Child based on the court's factual findings, which are supported by the record, and we conclude that its decision to grant Father's request to relocate with Child to Florida is reasonable. *See A.V. v. S.T.*, 87 A.3d at 820. Thus, we discern no abuse of discretion. Accordingly, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/20/2025